UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                        :
JOSE LUIS HERNANDEZ LEONARDO et al.,  :
                                                        :
                              Plaintiffs,       :
                                                        :                    20-CV-8879 (VSB)
                     -against-                  :
                                                        :              **OPINION &ORDER**
REZA FAST FOOD, INC. (D/B/A CROWN    :
FRIED CHICEKN) and ADEL EJTEMAI,      :
                                                        :
                              Defendants.    :
                                                        :
---------------------------------------------------------X

Catalina Sojo
Clela Alice Errington
CSM Legal P.C.
New York, New York
*Counsel for Plaintiff*

Stephen D. Hans
Stephen D. Hans & Associates, P.C.
Long Island City, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

On February 25, 2022, after it was reported that the parties had reached a settlement

agreement in this Fair Labor Standards Act ("FLSA") case, I directed the parties to submit their

settlement agreement for approval. (Doc. 36.) Parties may not privately settle FLSA claims absent

the approval of the district court or the Department of Labor. *See Samake v. Thunder Lube, Inc.*, 24

F.4th 804, 806–07 (2d Cir. 2022); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d

Cir. 2015). In the absence of Department of Labor approval, the parties must demonstrate to this

Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582,

584 (S.D.N.Y. 2015). The parties filed their settlement agreement, and a letter in support of that

agreement, on April 7, 2022.  (Doc. 39 ("Settlement Ltr."); *see also* Doc. 39-1 ("Settlement Agreement).)

Because the Settlement Agreement contains an overly broad release, I find that the Settlement Agreement is not fair and reasonable.

### I.      Legal Standard

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion."  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs."  *Fisher v. SD Prot. Inc*., 948 F.3d 593, 600 (2d Cir. 2020).  In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]."  *Id.*  The Second Circuit has described a presumptively reasonable fee as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (internal quotation marks omitted).  A fee may not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation."  *Fisher*, 948 F.3d, at 604 (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it."  *Id.* at 597.

**II.**   **Discussion**

    **A.**   ***Non-Monetary Provisions***

The Settlement contains a clause, under the heading "Release and Covenant Not To Sue" ("Release"), stating that "Plaintiffs hereby irrevocably and unconditionally release from and forever discharges [sic] and covenant not to sue Defendants . . . any and all charges, complaints, claims, causes of action . . . and any other liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether fixed or contingent . . . which Plaintiffs at any time has, had, claims or claimed to have against Defendants relating specifically to the claims in the Litigation that have occurred as of the Effective Date of this Agreement."  (Settlement ¶ 2.)

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'"  *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F.Supp.3d 170, 181 (S.D.N.Y. 2015)).

The above-quoted language from the Release is too broad since it appears to not be limited to the wage and hour claims at issue in this action.  Specifically, the Release requires Plaintiffs to "waive[] any and all charges, complaints, claims, causes of action . . . and any other liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether fixed or contingent . . . which Plaintiffs at any time has, had, claims or claimed to have against Defendants relating specifically to the claims in the Litigation that have occurred as of the Effective Date of this

Agreement." (Settlement ¶ 2.)  The parties do not mention this clause in their letter or even attempt to justify it.  Thus, I cannot approve the Settlement.

###### B.     *Settlement Amounts*

When assessing the fairness of a settlement amount in a FLSA action, courts in this circuit consider a "maximum possible recovery," which includes all possible bases entitling a FLSA plaintiff to monetary relief, such as "liquidated damages." *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322 (S.D.N.Y. 2021); *Zorn-Hill v. A2B Taxi LLC*, Case No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) ("The percentages provided by the Parties undercount the [p]laintiffs' alleged damages and best-case return [because] . . .  they do not include liquidated damages."); *Vargas v. Pier 59 Studios L.P.*, 18-CV-10357 (VSB), 2020 WL 8678094, at *1 (S.D.N.Y. Sept. 10, 2020) ("Plaintiff's calculation of potential recovery does not appear to include the possibility of liquidated damages, which FLSA authorizes at a rate of 100 percent of unpaid wages.").  Because of this, parties seeking approval of a FLSA settlement must supply calculation addressing all possible sources of a plaintiff's potential damages. *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, 19-CV-2967 (VSB), 2022 WL 576300, at *2 n.1 (S.D.N.Y. Feb. 25, 2022) (calculating damages based on "unpaid minimum wage, unpaid overtime premiums, unpaid spread of hours premiums, liquidated damages, wage notice and wage statement damages, and interest as of the date of the mediation statement" (internal quotation marks omitted)); *Kanchanawong v. Amobee, Inc.*, 21-CV-4409 (VSB), 2021 WL 6500139, at *2 (S.D.N.Y. Dec. 27, 2021) (assessing a settlement breaking down the sources of possible damages as stemming from "around $51,000 in unpaid wages, $51,000 in liquidated damages, and $10,000 for violations of the Wage Theft Prevention Act"); *Galindo v. E. Cnty. Louth Inc.*, 16 Civ. 9149 (KPF), 2017 WL 5195237, at *4 (S.D.N.Y. Nov. 9, 2017) ("The settlement amount that Plaintiff is to receive, $5,292, would cover all back wages, liquidated damages, and statutory penalties.").

Here, "Plaintiffs estimate" that they are "entitled to back wages in the amount of $38,800.94" as compared with the Settlement's amount of $40,000.  (Settlement Ltr. 2.)  However, the parties do not address Plaintiffs' other potential sources of damages, such as liquidated damages or failures to provide wage notices.  It may be that $38,800.94 is a fair and reasonable settlement amount even after all sources of damages are accounted for.  However, given that I am already rejecting the Settlement due to issues with its clause releasing claims, *supra*, if the parties should seek approval again, they must provide information that allows me to understand how the amount to be paid to Plaintiffs under any revised settlement amount is fair and reasonable when compared to Plaintiffs' "maximum possible recovery," *Miranda v. Grace Farms, Inc.*, 16-CV-1369 (VSB), 2022 WL 1771720, at *4 (S.D.N.Y. May 31, 2022) (quoting *Cronk*, 538 F. Supp. 3d at 322).

Moreover, the parties do not provide an estimation of each Plaintiff's damages, but only state the $38,800.94 amount in the aggregate.  If the parties seek further settlement approval, they must provide information about each Plaintiff's total possible damages and how much each Plaintiff is ultimately receiving under a settlement.

### C.   *Attorneys' Fees*

Plaintiffs' counsel request "$13,333.33" in attorneys' fees and costs.  (Settlement Ltr. 2.) They say this "represents one third of the recovery in this litigation," which is "a reduction" of the "forty percent of Plaintiff recovery" to which counsel is entitled under the operative "retainer agreement."  (*Id.*)  In seeking approval of a revised settlement, Plaintiffs' counsel should file the retainer agreement with the Court.  *See Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810 (KAM) (TAM), 2021 WL 5409097, at *2 (E.D.N.Y. July 14, 2021) (stating that "Plaintiffs' counsel . . . submit the supporting retainer agreement and billing records to permit judicial review of the proposed attorneys' fees").

### III.   Conclusion

For the reasons stated above, I find that the Settlement is not fair and reasonable.  It is thus REJECTED.  The parties may proceed by either:

1.  Filing a revised settlement agreement within twenty-one (21) days of the date of this Opinion & Order along with a new letter that explains why the revised Settlement is fair and reasonable and addresses the other issues identified in this Opinion & Order; or

2.  Filing a joint letter within twenty-one (21) days of the date of this Opinion & Order that indicates the parties' intention to abandon settlement, at which point I will set a date for a status conference.

SO ORDERED.

Dated:      July 5, 2022
            New York, New York

_____
Vernon S. Broderick
United States District Judge